IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

TRAVEL SERVICES, INC. and          )
GRAND VACATION CLUB, INC.,         )
                                    )
    Plaintiffs,                    )
                                    )          NO. 16-3042
    v.                             )
                                    )
VACATION TOURS USA, INC.,          )
HENRY J. ARMAND and                )
MILLENNIUM TRAVEL AND              )
PROMOTIONS, INC.,                  )
                                    )
    Defendants.                    )

OPINION

RICHARD MILLS, U.S. District Judge:

Defendants move to dismiss for lack of personal jurisdiction and/or

failure to state a claim.

Allowed.

Case closed.

I. FACTUAL ALLEGATIONS

A. Background

The Complaint alleges that Plaintiff Grand Vacation Club is in the

business of selling travel memberships to individual consumers in the State of Wisconsin.  Grand Vacation Club is owned by Travel Services, Inc. Defendants Vacation Tours USA, Inc. and Millennium Travel and Promotions, Inc. are owned by Defendant Henry J. Armand and his son, Tony Armand.  The dispute centers on a marketing agreement entered into by Grand Vacation Club and Vacation Tours USA.

Plaintiff Grand Vacation Club's ("Plaintiff" or "Grand") travel memberships were sold to Wisconsin consumers who attended a brief sales presentation by the Plaintiff offering membership in a travel concierge service.  In an effort to generate leads for the Plaintiff's sales presentations in Wisconsin, on or about January 22, 2009, the Plaintiff entered into the marketing agreement with Defendants Vacation Tours USA ("Vacation Tours") and Millennium Travel and Promotions ("Millennium" and collectively, "Defendants") for marketing services to the Plaintiff.  Grand alleges that the marketing agreement required that Defendants legally generate sales leads for the Plaintiffs.

According to the Complaint, the Plaintiffs believe that Defendants

2

generally employed a methodology to generate sales leads which used postcards and telephone calls to Wisconsin consumers.  During the calls, Wisconsin consumers were promised by an employee and agent of the Defendants that the recipient would receive a travel award or gift from the Defendants in exchange for attending a brief sales presentation, in this instance the Plaintiff's sales presentation.  Millennium provided and managed the award and gift certificates given to the Wisconsin consumers.

The marketing agreement provided that Defendants comply with all applicable laws including, without limitation, laws concerning telemarketing, "Do Not Call" lists, solicitation practices, deceptive practices, and other consumer protection laws.  The marketing agreement further provided that Defendants would indemnify and hold harmless Grand and its officers, directors, shareholders and agents, among others, from any loss, fine, penalty, award, damage or liability that resulted from the Defendants' acts and omissions in connection with their sales lead generation program and gift certificates.

The Plaintiffs allege that soon after signing the marketing agreement,

Vacation Tours mailed tens of thousands of marketing postcards to Wisconsin residents as part of its sales lead generation program. The Defendants' agent and principal, Armand, represented to Grand's President that the marketing postcards were reviewed, vetted and approved as complying with all laws and statutes applicable to Wisconsin consumers by the Defendants' legal counsel prior to mailing of the postcards. The Plaintiffs believe the Defendants' legal counsel did not review and approve for legal compliance the content of the postcards created by Vacation Tours that were mailed to Wisconsin consumers.

Millennium provided the travel award and gift certificate given to Wisconsin consumers who attended the Plaintiff's sales presentations. The Plaintiffs paid both Defendants for the services each provided under the marketing agreement and fully complied with all conditions of the marketing agreement.

B. Wisconsin lawsuits

On or before January 13, 2002, the State of Wisconsin filed two lawsuits against the Plaintiffs and others: one in Outagamie County, styled

Case Nos. 2010-CX-1 through 1D and 1G through 1I, State of Wisconsin

v. Going Places Travel Corporation, Perry T. Cruz, Lisa Ann Ruiz,

Castaways Vacations, Inc., William Bailey, Christy Spensberger, and Travel

Services, Inc., in the Circuit Court, Branch 6, of Outagamie County

Wisconsin; and one in Waukesha County, styled Case Nos. 2012-CX-1

through 1C, State of Wisconsin v. Grand Vacation Club, Inc., William

Bailey, Christy Spensberger, and Travel Services, Inc., in the Circuit Court,

Branch 5, Waukesha County, Wisconsin.  The Wisconsin lawsuits alleged

violations of Wisconsin consumer protection laws.

In the Waukesha County Lawsuit, the State complained that

Vacation Tour's postcards constituted "prize notices" that violated

Wisconsin Statute § 100.171.  Specifically, the State alleged:

> 28.   Solicitations were mailed to certain Wisconsin residents on behalf of Grand Vacation Club which represented to those residents that they had been awarded or were being offered two round trip airline tickets to any major international airport anywhere in the continental USA, including a three day/two night getaway that can be used at hundreds of Marriott properties in the continental USA, a $30.00 dinner card for two to be used at named restaurants, and a complimentary $300 grocery voucher or rebate if the resident responded within 72 hours.  The

mailed cards invited the recipient to call.  Certain of the mail solicitations also included, in fine print, "Introducing a great way to save thousands on future vacations. Refundable $50 pp deposit, airline tax, and other appropriate sales tax due upon travel agreement.  Retail value of gift is $1,399."  Said mailed solicitations constitute a "prize notice" as defined by Wis. Stat. § 100.171(1)(b)1 (hereinafter the "mailed prize notices").

29.  Upon information and belief, at least some of the Wisconsin residents who called in response to the mailed prize notices were told that the complimentary offer was being offered by Grand Vacation Club in Waukesha, Wisconsin and that the promotion had nothing to do with timeshare or real estate.  Further, at least some of the Wisconsin residents were invited to an open house presentation being held for select residents in the area, were asked certain questions to determine if they were qualified, were informed of some particulars of the promotional items such as a set refundable deposit amount per ticket plus undisclosed amounts of taxes, airline security fees and airport service fees, were informed that a 90-day advance notice was required for booking the airline tickets, that there were blackout dates seven days before or after major holidays (those holidays were not disclosed), were informed regarding certain particulars as to the other promotional items offered, and were informed that the Wisconsin resident and spouse/significant other were required to attend one of the friendly and informative 90 minute presentations about a named travel club and their travel programs.  Said telephone conversations also constitute a "prize notice" as defined by Wis. Stat. § 100.171(1)(b)1.

30.    Further, certain Wisconsin residents were directly contacted by telephone, during which telephone call, upon information and belief, they were informed that the purpose of the call was to introduce the Wisconsin resident to Grand Vacation Club, that the invitation was to preview their club and services, that those selected to participate in the promotion would receive three fabulous days and two exciting nights including accommodations and two roundtrip airfares from a major international U.S. airport, which complimentary vacation was good for one full year.  The caller then asked questions as to the eligibility requirements for the promotion.   If the Wisconsin resident receiving the call met the requirements they were told they qualify for the fabulous vacation and were then told when they came to pick up their vacation certificate, they would be required to attend a 90-minute travel club presentation explaining the advantages of using its programs and services to satisfy vacation and travel needs, that the Wisconsin resident did not have to purchase anything to receive the gift and that all that was asked is that they attend the presentation and promise to consider them in the future for their travel needs.  Upon information and belief[,] that phone call was thereafter followed up with some form of written or emailed communication which, among other things informed the Wisconsin resident that he/she would be responsible to pay certain sums or would be responsible for taxes, surcharges, port charges and government fees, if applicable, regarding the use of the gift vacation.  Said telephone conversations, in conjunction with the initial follow-up written or email communication, also constitute a "prize notice" as defined by Wis. Stat. § 100.171(1)(b)1.

The Plaintiffs allege that on July 27, 2012, Bailey contacted Defendant Hank Armand by email to discuss the Defendants' responsibility for the Plaintiffs' damages exposure in the Wisconsin Lawsuits. Armand, acting for himself, and as agent of the other Defendants, agreed a few days later that Defendants would pay half of the costs of the Plaintiffs' legal defense in the Wisconsin lawsuits in exchange for Plaintiffs not adding Defendants as parties to each case. Relying on the Defendants' promise, the Plaintiffs did not implead and sue the Defendants in the Wisconsin lawsuits or otherwise attempt to draw the Defendants into those lawsuits.

The Complaint states that the Outagamie County lawsuit was tried to a jury in or about January 2014. The jury found in favor of the State of Wisconsin. Based upon the jury's findings, the Outagamie court awarded damages in excess of $3.8 million jointly and severally against Travel Services and its co-defendants. The award of damages included forfeitures in the amount of $200,000 for direct mail violations, the minimum of $100 for each of only 2,000 postcard violations mailed by the Defendant.

The State's claims in the Waukesha County case were virtually

identical and involved at least 190 consumers.  The extrapolation of the number of consumer complaints against the damages awarded in the Outagamie County case portended a potential verdict and judgment in the Waukesha County lawsuit which could easily have eclipsed $2 million.  The Plaintiffs were faced with the prospect of aggressive collection of the entire judgment in the Outagamie County case in post-judgment proceedings, and another potentially very large judgment if they proceeded to trial on the remaining claims in the Waukesha County lawsuit.  This impression was reinformed in hearings before the Waukesha County court, which signaled that it would adopt the Outagamie County court's liability findings for the mail transaction violations.  The Waukesha County court further made it clear that it intended to try the case on issues limited only to the nature and extent of damages, forfeitures, penalties, the State's attorney's fees and costs of prosecution.

C. Settlement of Wisconsin lawsuits and claims in this case

The Plaintiffs allege that, after considering these scenarios, they negotiated a settlement of all of the State's claims against the Plaintiffs for

the sum of $2,300,000.  The sum was not apportioned.  The Plaintiffs paid

the settlement in full.   In addition to payment of the settlement, the

Plaintiffs incurred the sum of more than $700,000 for the defense of the

Wisconsin lawsuits.

On November 12, 2015, the Plaintiffs sent the Defendant a certified

letter invoking the indemnity provisions of the marketing agreement and

the Defendants' agreement to pay half of the Plaintiffs' attorney's fees in

the Wisconsin lawsuits due to the Defendant's failure to perform marketing

services in compliance with local and state law.  As of the filing of this

lawsuit, the Defendants have not substantively responded to the Plaintiffs'

demand for indemnity and have refused to tender payment.

The Plaintiffs allege that, as a direct and proximate result of the

damages suffered by the Plaintiffs in the Outagamie and Waukesha County

lawsuits, the Defendants are proportionately liable for the payment of at

least $1,500,000 resulting from their illegal actions and omissions,

including the creation and distribution of the illegal marketing postcards

and gift certificates.  The Plaintiffs assert counts for breach of contract and

other claims.

The Defendants contend the case must be dismissed because the Court lacks personal jurisdiction over the Defendants.  If personal jurisdiction exists, the Defendants allege the Complaint should be dismissed for failure to state a claim upon which relief can be granted.  The Plaintiffs contend that Defendants have sufficient contacts with Illinois to establish personal jurisdiction and, further, that Plaintiffs' allegations in the Complaint are sufficient to assert a claim.

## II. DISCUSSION

### A. Legal standard

The Defendants move to dismiss under Rule 12(b)(2) based on a lack of personal jurisdiction.  Pursuant to International Shoe v. State of Washington, 326 U.S. 310 (1945), the exercise of jurisdiction must be consistent with "traditional notions of fair play and substantial justice."  Id. at 316.

A plaintiff has the burden of establishing personal jurisdiction when it is challenged by the defendant.  See Northern Grain Marketing, LLC v.

11

Greving, 743 F.3d 487, 491 (7th Cir. 2014).  When a defendant's motion to dismiss is based on the submission of written materials and no hearing is held, the plaintiff "need only make out a prima facie case of personal jurisdiction" to meet its burden.  See id. (citations omitted).  In these circumstances, factual disputes are resolved in favor of the plaintiff.  See id.  However, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 783 (7th Cir. 2003).

A federal court sitting in diversity looks to the personal jurisdiction law of the state in which the court sits to determine if it has personal jurisdiction over a defendant.  See Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002).  In Vikron Ltd. Partnership v. Program Data, Inc., 326 Ill. App.3d 111 (2d Dist. 2001), the Illinois Appellate Court considered a number of factors, including (1) where the contract was formed; (2) where performance was to take place; and (3) where the contract was negotiated.

See id. at 117-18.

The Illinois long-arm statute contains a "catch-all" provision which permits a court to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." Citadel Group Ltd. v. Washington Regional Medical Center, 536 F.3d 757, 760-61 (7th Cir. 2008) (quoting 735 ILCS 5/2-209(c)). Accordingly, "the statutory question merges with the constitutional one–if Illinois constitutionally may exercise jurisdiction over a defendant, its long-arm statute will enable it to do so." Northern Grain, 743 F.3d at 492. "The Illinois constitution requires that jurisdiction be asserted only where it is fair, just, and reasonable . . . considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." See Citadel Group, 743 F.3d at 761 (internal quotation marks and citations omitted). Additionally, if personal jurisdiction is appropriate under the Illinois Constitution, it almost certainly will meet federal due process requirements.

To meet federal due process requirements, a "defendant's contacts

with the forum state must directly relate to the challenged conduct or transaction." Northern Grain, 743 F.3d at 492 (internal quotation marks and citations omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum state." Advanced Tactical Ordinance Systems, LLC v. Real Action Paintball, Inc., 751 F.3d 796, 801 (emphasis in original) (citation omitted). "It is the defendant–not the plaintiff or third parties–that must create the contacts in the forum state, and those contacts must be with the forum State itself, not . . . with persons who reside there." Philos Technologies, Inc. v. Philos & D, Inc., 802 F.3d 905, 913 (7th Cir. 2015) (internal quotation marks and citation omitted). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." Northern Grain, 743 F.3d at 492 (citations omitted). In other words, "[t]he defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate

that he could be haled into court there."  Id.

B. Defendants' contacts with Illinois

(1)

The Plaintiffs allege the Defendants' wrongful conduct which is the basis of the lawsuit arises out of and relates to specific–and purposeful–business contacts made with the Plaintiffs' principal, William H. Bailey, in Illinois.  Bailey is an Illinois resident and Defendant Henry Armand, a Florida resident, signed the marketing agreement as an "owner" of Vacation Tours.  The Plaintiffs contend that the terms and provisions of the marketing agreement were discussed, negotiated, tendered and agreed upon by Bailey, on Grand's behalf, and Armand on Vacation Tours's behalf, through a contemplated series of telephone conferences, emails, mailings and, most importantly, (mis)representations made by Armand and purposefully directed towards Bailey's business offices located in Litchfield, Illinois.

The Plaintiffs acknowledge the fact that a contract formed between an out-of-state party and an in-state party may not be sufficient to establish

the requisite minimum contacts, though they allege that "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing may demonstrate that the defendant has purposefully availed itself of the forum." See Philos, 802 F.3d at 913. Factors to consider include "(1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was formed; and (4) where performance of the contract was to take place." Id.

The Plaintiffs claim that Bailey initiated contact with Armand regarding an agreement with Millennium and Vacation Tours to review applicable Wisconsin consumer law and then generate travel gift certificates and marketing mailing pieces and postcards for Bailey's Illinois companies to use in Wisconsin. Subsequently, Armand negotiated the terms of the contract through a sequence of telephone and email communications occurring between the Defendants' offices in Florida and the Plaintiffs' offices in Litchfield, Illinois. The Plaintiffs claim that although they initiated discussions for acquiring the Defendants' services, it was the Defendants' reciprocal conduct in negotiating the terms and subsequently

16

shipping the marketing materials into Illinois that makes personal jurisdiction appropriate in this case.

Additionally, the Plaintiffs contend that Vacation Tours, Millennium and Armand routinely sent invoices to, and accepted payment from, the Plaintiffs' offices in Litchfield, Illinois.  Throughout a seven-month period, Vacation Tours and Millennium sent approximately 45 invoices to Travel Services and Grand's business offices in Illinois.   Vacation Tours, Millennium and Armand received more than $700,000 by checks drawn on U.S. Bank in Carlinville, Illinois, on company bank accounts for Grand and affiliated companies, as payment for services rendered under the marketing agreement.

Significantly, it was Bailey on behalf of Grand who contacted Armand and Vacation Tours in Florida.  The Defendants did not initiate a business relationship with the Illinois Plaintiffs.  The performance of the contract was to take place in Wisconsin.  Any contacts that Defendants had with Illinois–such as the negotiation of the contract and telephone or email communications in furtherance of that process–are based on the Plaintiffs'

contacts with Illinois.  The same is true regarding the shipping of marketing materials to Illinois.  All of this was done simply because the Plaintiffs happen to be located in Illinois.  Such incidental contact is not enough to confer personal jurisdiction.  See Philos, 802 F.3d at 913 (noting that the contacts must be with the forum state and not the persons who reside there).

The fact that the Plaintiffs banked with an Illinois bank is unremarkable but does not change the analysis.  That is a contact the Plaintiffs have with Illinois.  The Defendants have not purposefully directed their activities with Illinois by accepting payments in the form of checks drawn on an Illinois-based bank.  That is simply an incident of doing business with Illinois-based parties.

(2)

The Plaintiffs further assert that Vacation Tours and Millennium delivered a draft of the marketing materials to Grand's physical offices in Illinois, representing that the materials had been vetted by the Defendants' attorneys and complied with Wisconsin law.  In fact, the materials did not

comply with Wisconsin laws at the time.  The Plaintiffs contend that, because the goods tendered to them in Illinois failed to meet the specific criteria warranted and represented in the parties' marketing agreement, the Defendants' conduct that is the basis of the lawsuit occurred in the forum state of Illinois–not in Wisconsin.

As the Plaintiffs acknowledge, however, the suit-related contact that serves as the basis of the action relates exclusively to Wisconsin.  The suit concerns travel club memberships to Wisconsin residents.  The marketing and promotional activities are directed at Wisconsin residents and the marketing agreement between the parties is based on Wisconsin state law.  The two lawsuits filed by the State of Wisconsin were based on alleged violations of Wisconsin state and consumer protection laws.  The challenged conduct all relates to Wisconsin, which establishes that Wisconsin, not Illinois, would have specific jurisdiction over the Defendants.

The Plaintiffs further allege these were not random or attenuated contacts.  Armand, as owner of Vacation Tours, sent numerous emails to

Bailey concerning implementation of the marketing agreement's scope of work.  The marketing materials developed by the Defendants' lawyers were then shipped by Vacation Tours and Millennium to the Plaintiffs' business offices located in Litchfield, Illinois.

Additionally, the Plaintiffs claim that over the course of the business relationship, there were numerous emails and other correspondence from the Defendants that were transmitted to Illinois business addresses.  By entering into the marketing agreement, the Plaintiffs sought to secure lawful advertising under Wisconsin law.  The Defendants' breach of contract arose directly from the negotiations, warranties and representations and subsequent shipment of marketing materials all directed towards the Plaintiffs' offices located in Illinois.

However, all of these alleged contacts that Defendants have with Illinois–telephone calls, emails or regular mail–derive from the <u>Plaintiffs</u>' contacts with Illinois.  This is insufficient to establish personal jurisdiction when the challenged conduct all relates to Wisconsin.  See Philos, 802 F.3d at 913.

(3)

Finally, the Plaintiffs assert that the Parties' lone "choice of law" provision in the marketing agreement which designated Illinois state laws as controlling is at least some evidence that Defendants intended in the future, or preferred, to avail themselves of the benefits and protections of Illinois laws.   However, the Plaintiffs' argument on this point is not persuasive.   "In Illinois, 'there is a presumption against provisions that easily could have been included in a contract but were not.'" Eclipse Aerospace, Inc. v. Star 7, LLC, 2016 WL 901297, at *7 (N.D. Ill. March 3, 2016) (quoting Thompson v. Gordon, 948 N.E.2d 39, 51 (Ill. 2011)). The court in Eclipse further stated:

> The parties easily could have mandated a choice of venue for Eclipse as well as Star 7, but they did not, and a court cannot alter, change or modify existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted, take away something which the parties have included or add another term about which the agreement is silent.  Thus, we find that the Contract's silence on a choice of venue for an action brought by Eclipse, in contrast to the clause mandating that Star 7 bring suit in Illinois, undermines plaintiff's argument that defendants should have known that they could be haled into court in Illinois.

Id. (internal quotation marks and citations omitted).  The parties could have included a provision in the marketing agreement which specified that any disputes concerning the marketing agreement would be litigated in Illinois.  They did not do so.

Because there is no forum selection clause and because the litigation-related conduct that serves as the basis for the Plaintiffs' complaint relates exclusively to Wisconsin, the Court concludes that it lacks personal jurisdiction over any Defendant in this case.[1]

Ergo, the Defendants' Motion to Dismiss [d/e 7] is ALLOWED.

This case is Dismissed for lack of personal jurisdiction.

CASE CLOSED.

ENTER: October 31, 2016

FOR THE COURT:

/s/ Richard Mills
Richard Mills
United States District Judge

---

[1]Having concluded that dismissal is appropriate for lack of personal jurisdiction, the Court need not address the Defendants' other arguments.